UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NUHEARA IP PTY LTD and NUHEARA LIMITED,<br><br>　　Plaintiffs and Counterclaim-Defendants,<br><br>　　v.<br><br>ANKER INNOVATIONS LIMITED, FANTASIA TRADING LLC d/b/a ANKERDIRECT, and POWER MOBILE LIFE, LLC,<br><br>　　Defendants and Counterclaim-Plaintiffs. | CASE NO. 2:20-cv-01161-BJR<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.  As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.   ESI Disclosures**

No later than May 10, 2021, each party shall separately disclose:

1.  <u>Custodians.</u> Three to five custodians for each side that are most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. If a party, after conducting a good faith investigation, discovers that the party has fewer than three custodians that are likely to have discoverable ESI in their possession, custody, or control, or that the party must disclose more than five custodians to cover all relevant topics, the parties shall meet and confer to agree on a smaller or larger number of custodians, as the case requires.

2.  <u>Non-custodial Data Sources.</u> A list of non-custodial data sources within the party's possession, custody, or control (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.  <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.  <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the

data source) and within the party's possession, custody, or control that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

     5.    <u>Foreign data privacy laws.</u>  Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679.  One or more of the parties may have information located outside the United States that may be subject to foreign data protection laws or government/state secrecy laws, including but not limited to, the Law of the People's Republic of China on Guarding State Secrets (adopted in 1988, revised 2010), the Law of the People's Republic of China on Accounting Archives Management Measures law, the Anti-Unfair Competition Law of the People's Republic of China, and/or the General Data Protection Regulation (2016/679) of the European Union.  If a party determines in good faith that information subject to a discovery request is reportedly subject to any such laws and must be withheld, the party shall promptly notify all other parties in writing and the parties shall then meet and confer to work cooperatively toward resolving any ESI or other discovery request in a manner that complies with any relevant data privacy laws.

**C.    ESI Discovery Procedures**

     1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

     2.    <u>Schedule for search methodology and production.</u> The parties shall follow the below schedule to (a) attempt to reach agreement on file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken; and (b) facilitate the production of ESI materials and the

exchange of privilege logs in advance of the deadlines for expert disclosures and the close of discovery.

| | |
|---|---|
| 5/10/21 | Parties make disclosures per Section C.2.a.i |
| 5/19/21 | Parties propose revisions to search terms and queries per Section C.2.a.ii-iii |
| 5/20 to 5/30/21 | Parties confer on search terms and queries |
| 5/31/21 | Parties finalize search terms and queries per Section C.2.a.iv |
| 6/1 to 8/30/21 | Parties commence and continue rolling productions of ESI |
| 8/31/21 | Parties' ESI productions in response to the first sets of requests for production are substantially complete |
| 9/14/21 | Parties exchange privilege logs for materials produced thus far |

The parties shall continue to cooperate in revising the appropriateness of the search methodology.

    a.    Prior to running searches:

        i.    By May 10, 2021, the producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query. The list of proposed search terms and queries shall take into account any requests for production thus served upon the party, as well as the party's own knowledge of information likely to be relevant to the proceeding. If the data sources are likely to contain information in a language other than English, the party shall provide the English search terms and their non-English

translations to run in the non-English information sources. The translations should take into account for variations that may result from translation.

        ii.       By May 19, 2021, the requesting party may propose additions and revisions to the search terms or queries disclosed by the producing party. Thereafter, the parties will correspond and confer on a total of up to 15 search terms or queries and the projected number of hits in order to further refine the search terms and queries, if necessary. The parties reserve the right to object to requested search terms or queries on grounds including burden as well as technical feasibility in running the searches.

        iii.      The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants or synonyms of the same word, within reason and subject to the parties' meet and confer. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

        iv.      By May 31, 2021, the parties shall finalize their search terms and queries and thereafter the parties shall begin reviewing and producing responsive ESI materials on a rolling basis. If a responding party has reason to believe that information it has agreed to produce in response to any particular request for production fails to return from the agreed-upon search terms and data sources in this Section C.2 (e.g., financial information), the party responding to the request shall use a different methodology to collect and produce that

1 information (e.g., targeted collection). To the extent the parties are not able to reach agreement on a particular search term or query, the requesting party may seek relief from the Court by filing a motion on that particular search term or query. That motion shall not affect the producing party's obligation to begin reviewing and producing ESI materials that result from those search terms and hits upon which the parties did reach agreement.

      b.      By August 31, 2021, the parties' ESI productions shall be substantially complete.

      c.      By September 21, 2020, the parties shall meet and confer to discuss whether additional search terms or queries should be run and a timeline for producing the hits from same. The immediately preceding section (Section C(2)(a)(iii)) applies.

      d.      Section C.2 shall not prevent any party from requesting that additional responsive materials be produced, including as additional discovery requests are served, and in advance of expert disclosure deadlines. Regarding those requests for production that follow the first sets, the party responding to the requests for production shall be responsible for identifying those data sources and search methodologies necessary to timely respond to the requests per Fed. R. Civ. P. 26 and 34.

3. <u>Format.</u>

      a.      Except for the exceptions below, ESI will be produced in single-page TIFFs with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files, per the below.

      b.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, audio, video, and drawing files, will be produced in native format. Native files shall be produced with a link in the NATIVEPATH field, along

with extracted text when extracted text is available, and all applicable metadata fields, per the below.  A Bates numbered TIFF placeholder indicating that the document was provided in native format much accompany every native file.

    c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Parent-child relationships (the association between an attachment and its parent document, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The producing party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged, and in that case, the family will be Bates numbered with a placeholder for the removed document and, if applicable, the removed document will be logged on the Privilege Log.  To the extent the metadata for a removed document is not itself privileged or protected, the metadata for the removed document will be produced.

    e. For all files that originated in electronic form, the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file.  When no extracted text is available (e.g., because the document was scanned from hard copy), OCR text shall be produced ("OCR Text") unless the production of OCR Text is not technologically feasible.  The Extracted Text or OCR Text shall be provided in one text file per document and

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER   PAGE - 7
(Case No. 2:20-cv-01161-BJR)
4850-8135-7544v.1 0116147-000001

searchable ASCII text format (or Unicode text format if the text is in a foreign language), and the text file shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. <u>De-duplication.</u> The parties shall use industry standards to de-duplicate their ESI production based on MD5HASH values across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file. Notwithstanding the forgoing, attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email attachment elsewhere in the production.

5. <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

6. <u>Metadata fields.</u> The parties agree the following metadata fields shall be produced to the extent the datum exists and is reasonably accessible and non-privileged.  Except for Fields 1-5 below, there is no obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or for data that do not exist as part of the original metadata of the file.  The parties agree that they shall report time in Pacific Standard Time, to the extent feasible, and shall denote the time zone otherwise.

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 3 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 4 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 5 | CUSTODIAN(S) | Custodian to whom the data is associated and any duplicate custodians; or the storage location if no custodian | John Doe |
| 6 | DOCTYPE | Type of document | Email, Excel, PDF |
| 7 | FROM | Author of the email message | Mary.Smith@hotmail.com |
| 8 | TO | Main recipient(s) of the email message, by email address. | JohnDoe@gmail.com |
| 9 | CC | Recipient(s) of "Carbon Copies" of the email message. | Michael123@yahoo.com |
| 10 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| 11 | SUBJECT | Subject of the email message. | Fw: Urgent |
| 12 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 13 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 14 | TIMEMODIFIED | Last time the document was modified. | 11:20:30 |
| 15 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 16 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 17 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 18 | DATEMODIFIED | The last date on which the document was modified | 02/24/2007 |
| 19 | CONFIDENTIALITY | _Confidentiality designation | Confidential; Confidential – Attorneys Eyes Only |
| 20 | FILESIZE | Size of native file, in bytes | 2546683 |
| 21 | PAGECOUNT | Number of pages | 3 |
| 22 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 23 | NATIVEFILEPATH | Path to the native file for the document. | Natives\EFXAA00000001.xlsx |
| 24 | REDACTIONFLAG | Note when document contains redactions | Yes/No |
| 25 | REDACTIONBASIS | The basis for the redaction including Non-responsive business information (NRBI) or privilege | NRBI or Privilege |
| 26 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| 27 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA00000001.txt |
| 28 | PRODVOLUME | Production Volume | |

The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7.  <u>Hard-Copy Documents.</u> Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension), and will include a cross-reference file that sets forth the custodian or custodian/location associated with each produced document, to the extent applicable.

D.    **Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a.   Deleted, slack, fragmented, or other data only accessible by forensics.
   b.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
   c.   On-line access data such as temporary internet files, history, cache, cookies, and the like.
   d.   Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
   e.   Back-up data that are duplicative of data that are more accessible elsewhere.
   f.   Server, system or network logs.
   g.   Data remaining from systems no longer in use that is unintelligible on the systems in use.
   h.   Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                      PAGE - 11
(Case No. 2:20-cv-01161-BJR)
4850-8135-7544v.1 0116147-000001

a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.     Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document, the basis for the claim (attorney-client privileged or work-product protection), and a description of the privilege or protection. Each entry shall include: all custodians; author/recipient or to/from/cc/bcc names; the file name, subject matter or title; and date created, sent, and/or modified. The parties may substitute a description of the file name, subject matter or title if those fields would reveal privileged information.  Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs for productions made on or before August 31, 2021 will be produced to all other parties no later than September 14, 2021.  For productions made after August 31, 2021, a privilege log will be produced no later than 14 calendar days later.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED: May 4, 2021

By: *s/ Lauren B. Rainwater*
Benjamin J. Byer, WSBA #38206
Lauren B. Rainwater, WSBA #43625
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Tel.: (206) 622-3150
Fax: (206) 757-7700
Email: benbyer@dwt.com
Email: laurenrainwater@dwt.com

Martha Jahn Snyder (*pro hac vice*)
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, Wisconsin 53703
Tel.: (608) 251-5000
Email: martha.snyder@quarles.com

*Attorneys for Plaintiffs, NUHEARA IP PTY LTD and NUHEARA LIMITED*

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER
(Case No. 2:20-cv-01161-BJR)
4850-8135-7544v.1 0116147-000001

PAGE - 13

DATED: May 4, 2021

By: *s/ Melanie D. Phillips*
Melanie D. Phillips (WSBA No. 48945)
Diana M. Rutowski (admitted *pro hac vice*)
Yufeng (Ethan) Ma (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
Tel.: (206) 839-4300
Fax: (206) 839-4301
Email: mphillips@orrick.com
drutowski@orrick.com
yma@orrick.com

*Attorneys for Defendants, ANKER INNOVATIONS LIMITED, FANTASIA TRADING LLC D/B/A ANKERDIRECT, AND POWER MOBILE LIFE, LLC*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: May 4, 2021.

*Barbara J. Rothstein*

The Honorable Barbara J. Rothstein
UNITED STATES DISTRICT JUDGE

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER
(Case No. 2:20-cv-01161-BJR)
4850-8135-7544v.1 0116147-000001

PAGE - 14